UNITED STATES of America,

v.

Jose Miguel BATTLE, Jr., et. al., Defendants.

No. 04 20159 CR GOLD, 04 20159 CR BANDSTRA.

United States District Court, S.D. Florida.

June 16, 2006.

United States of America, John Robert Blakey, Assistant United States Attorney, Juan Antonio Gonzalez, Assistant United States Attorney, United States Attorney's Office, Miami, FL, for Plaintiffs.

Jack Blumenfeld, Miami, FL, for Jose Miguel Battle, Sr.

Maria Del Carmen Calzon, Coral Gables, FL, for Manuel Osaac Marquez, Sr.

Joaquin G. Perez, Miami, FL, for Luis DeVilliers, Sr.

Joel Kaplan, Lisa Hanley Colon, (co-counsel), Miami, FL, for Jose M. Battle, Jr.

Paul D. Petruzzi, Miami, FL, for Abraham Rydz.

John F. O'Donnell, Fort Lauderdale, FL, for Julio Acuna.

Ramon de la Cabada, Miami, FL, for Orestes Vidan.

Ruben M. Garcia, Fort Lauderdale, FL, for Gustavo Battle.

Oscar Santiago–Rodriguez, Coral Gables, FL, for Gumersindo Gonzalez.

Richard Moore, Miami, FL, for Luis F. Perez.

Richard J. Diaz, Coral Gables, FL, for Orlando Cordoves.

Frank A. Rubino, Coconut Grove, FL, for Luis DeVilliers, Jr.

Curt D. Obront, McKenna & Obront, Miami, FL, for Maurilio Francisco Marquez.

Jose R.E. Batista, (local counsel), Batista and Batista, P.A., Miami, FL, Eren T. Irizarry Colon, Arecibo, PR, for Andres DeVilliers.

Mauricio Aldazabal, Coral Gables, FL, for Jorge Davila.

Emmanuel Perez, Coral Gables, FL, for Vivian Rydz.

Richard Docobo, Miami, FL, for Jose Aluart.

Orlando Do Campo, Assistant Federal Public Defender, Federal Public Defender's Office, Miami, FL, for Jorge Nunez.

Jose Rafael Rodriguez, Miami, FL, for Norberto Fernandez.

Reemberto Diaz, Miami, FL, for Argelio Jimenez.

Samuel J. Rabin, Miami, FL, for Mordehay Tako.

Steven E. Chaykin, Zuckerman Spaeder Taylor & Evans, Miami, FL, for Yoram Izhak.

Jeffrey S. Weiner, Miami, FL, for Tomas Cabrerizo.

Neal R. Sonnett, Miami, FL, for Evelyn Maribel Runciman.

Kenneth J. Kukec, Miami, FL, for Valerio Cerron.

### ORDER

GOLD, District Judge.

For Fed.R.Crim.P. 29 purposes, and pursuant to Fed.R.Evid. 103(c), I enter the following rulings and analysis on certain outstanding legal issues:

### A. Scope of the Alleged Enterprise

The Defendants claim that the evidence adduced at trial establish that the "CORPORATION," as the charged enterprise, did not come into existence until the early 1980's and, therefore, any predicate acts and activities occurring in the 1970's are outside the scope of the charged enterprise conspiracy. This issue has arisen with regard to evidence relating to the Ernesto Torres ("Torres") murder and the testimony of former New Jersey police officer Diego Mella. For Rule 29 purposes, I address, here, the structure and membership of the "enterprise" in the 1970's, and the relationship of the murder to the organization.

An analysis of the issue must begin with the definition of "enterprise" under the RICO statute. For RICO purposes, an "enterprise" "[i]ncludes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the United States Supreme Court stated: "The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct .... [This element] is proved by evidence of an on going organization, formal or informal, and by evidence that the various associates function as a continuing unit." id. at 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (emphasis added). The Turkette Court alluded to the fact that proof of a pattern of racketeering activity could also be used to show the existence of an enterprise. Turkette, 101 S.Ct. 2524 ("While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other."). Post Turkette, the Eleventh Circuit, in United States v. Weinstein, 762 F.2d 1522, 1536 (11th Cir.1985), stated that: "... the definitive factor in determining the existence of a RICO enterprise was an association of individuals, however loose or informal, which furnishes a vehicle for the commission of two or more predicate crimes (the pattern of racketeering activity requisite to the RICO violation)."

In several cases, the Eleventh Circuit has addressed the breadth of a RICO "enterprise." In United States v. Pipkins, 378 F.3d 1281, 1281 (11th Cir.2004), vacated on other grounds, 544 U.S. 902, 125 S.Ct. 1617, 161 L.Ed.2d 275 (2005), the Supreme Court explained: "An enterprise can consist of 'a group of persons associated together for a common purpose of engaging in a course of conduct ... proved by the evidence of an ongoing organization, formal or informal, and by the evidence that the various associates function as a continuing unit.'" (citation omitted). The Court further explained: "[A]n enterprise can exist in the absence of a formally structured group (citation omitted), which can be even 'be a myriopod criminal network, loosely connected but connected nonetheless.' We have held that there is no difference, for enterprise purposes, between a duly elected corporate board and an 'an amoeba-like infra-structure' in con-

trol of criminal activity." *Id.* Thus, there can be a "core" group of players with others that would participate in various means and ways, or even many ventures or individual conspiracies, provided there is " 'one enterprise, one common purpose, and one over-arching conspiracy.' " *Id.* at n. 4. (quoting *United States v. Valera*, 845 F.2d 923, 929 (11th Cir.1988)).

The Eleventh Circuit has held that proof of an association's devotion to "making money from repeated criminal activity ... demonstrates an enterprise's 'common purpose of engaging in a course of conduct, regardless of whether the criminal activity is diverse.' " *United States v. Church*, 955 F.2d 688, 698 (11th Cir.1992). Thus, an enterprise may consist of a core leader [1] and a changing roster of associates that were engaged, at various times, in obtaining income from illegal acts; secretly laundering illegally obtained money by funneling it into legitimate businesses; protecting the income by concealing the enterprise's ownership of the businesses; and protecting the members' interests in the businesses by violence. In *Church*, the "enterprise was devoted to making money from repeated criminal activity, and protecting that money by any means necessary." *Id. See also United States v. Weinstein*, 762 F.2d 1522, 1537 (11th Cir.1985)(quoting *United States v. Elliott*, 571 F.2d 880 (5th Cir.1978)) (the definitive factor in determining the existence of a RICO enterprise was an association of individuals, however loose or informal, which furnishes a vehicle for the commission of two or more predicate crimes (the pattern of racketeering activity requisite to the RICO violation)).

For Rule 29 purposes, the evidence sufficiently establishes that Battle, Sr. was the core leader of a large bolita gambling organization during the 1970's that operated in the New York area. However, the organization is distinct from Battle, Sr., although he was, at different times, its leader. The evidence also establishes that in the late 1970's, the organization was not known by the unofficial name of "THE CORPORATION." The organization charged in the Superseding Indictment existed nonetheless. It was structured in multiple tiers relating to the placing and collecting of illegal bets from various forms of illegal gambling. The organization was devoted to making as much money as possible through repeated bolita gambling. It also existed to protect that money by any means necessary. A key unifying factor for the ongoing organization during the 1970's, that tied it together as a continuous unit, was the respect and fear that Battle, Sr. instilled in others for the purpose of protecting the money-making interests of his organization. When necessary, violence was a tool used by the organization to effectuate this purpose. This ongoing factor continued to exist, according to Abraham Rydz ("Rydz"), even when Battle, Sr. was incarcerated in the 1970's.

With regard to the Torres murder, the evidence sufficiently establishes that Torres originally worked as an enforcer and later as a boilta banker for the Battle, Sr. organization in the 1970's. He left the organization because of a dispute with Battle, Sr. over his own outside gambling activities, which Battle, Sr. believed were inconsistent with the interests of the organization. Torres also owed the organization bolita money he collected as a banker.

Thereafter, Torres and Carlos ("Charlie") Hernandez ("Hernandez") entered their own conspiracy to kidnap and extort

---

1. An enterprise need not have a formal hierarchy. *United States v. Cagnina*, 697 F.2d 915, 921 (11th Cir.1983).

other bolita bankers that worked for Battle's organization. One such bolita banker was Luis Marrero ("Marrer"), who was related to Battle, Sr. Torres kidnapped and later killed Marrero. Battle, Sr. learned of Torres' involvement. Thereafter, members of the organization attempted to kill Torres on a number of occasions. Battle, Sr. eventually contracted with Hernandez to kill Torres and his girlfriend, Idalia Fernandez ("Fernandez"), who knew Battle, Sr. and who was knowledgeable about Torres' activities. The evidence sufficiently established that the Torres murder and the attempted murder of Fernandez were in furtherance of the RICO enterprise's conspiracy to punish the kidnaping and extortion of the organization's bolita bankers, including Marrero. Such killing also furthered the name and reputation of the RICO enterprise as charged in the Superseding Indictment. The evidence sufficiently established that the murder and attempted murder were committed by Julio Acuna ("Acuna") who was an enforcer for the organization and who acted under the direct orders of Battle, Sr. Defendant Acuna's role in this murder was set forth in the Superseding Indictment and his Bill of Particulars.

██ The issue, then, is whether this evidence is encompassed by the Superseding Indictment. I conclude that the Superseding Indictment and Acuna's Bill of Particulars are broad enough to include the Torres murder and conspiracy to murder Fernandez. The point is that the Superseding Indictment, while collectively referring to the enterprise as the "CORPORATION," more specifically refers to the "enterprise" as an international criminal organization known by various names, including the CORPORATION and the "Cuban Mafia." The CORPORATION is not charged as a "legal" entity. Rather, the Superseding Indictment refers to the "enterprise" as a group of individuals and entities associated in fact, including its leadership, membership and associates. The Superseding Indictment refers to the "enterprise" as an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the CORPORATION. The Superseding Indictment alleges that Battle, Sr., Acuna and others engaged in illegal activities from 1964 through the time of the filing of the Indictment.[2]

██ The evidence sufficiently establishes that the organization evolved with

2. Battle, Jr. cites *United States v. Weissman*, 899 F.2d 1111 (11th Cir.1990) in arguing that the Government's early 1970's evidence constituted an "amendment" to the Superseding Indictment. An amendment occurs when the charging terms of an indictment are altered. *Id.* at 1114. Battle, Jr. charges that the evidence constructively amended the indictment and constitutes per se reversible error because such an amendment violates his constitutional right to be tried only on charges presented in a grand jury indictment and creates the possibility that he may be convicted on grounds not alleged in the indictment. A variance, by contrast, does not affect the elements of the crimes charged; rather, it occurs when the facts proven at trial differ from those alleged in the indictment. *Id.* In *Weissman*, the Court held that the trial judge's response to the jury's request for clarification amended the indictment which allowed the

jury to convict the defendants of a RICO conspiracy other than the one detailed by the grand jury in the indictment. The Court stated that, based on the indictment in that case, the enterprise was synonymous with the "DeCavalcante family of La Costa Nostra." *Id.* at 1115. Instead of advising the jury of this, the trial judge gave an instruction that the word "enterprise," in accordance with the 18 U.S.C. § 1962(d), meant "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

Here, the Superseding Indictment is not so limited. As stated by the Eleventh Circuit in *Weissman*, the government in styling the indictment could have used the general language of the statute to refer to the enterprise in which the defendants were allegedly in-

different members but with the same common purposes and goals over the years. When Battle, Sr. was arrested in the 1970's, the organization diminished in size but continued to do business. It was during this period that Battle, Jr., along with Marquez, Sr., Battle Jr.'s uncle, joined the illegal gambling enterprise in the New York area. While in prison, Battle, Sr. requested that Rydz assist Battle, Jr. Even while in prison, Battle, Sr. remained the leader of the organization. Eventually, Rydz also joined the organization in the early 1980's primarily because of Battle, Sr.'s reputation. Upon release from prison, Battle, Sr. rejoined the organization and assumed a leadership role along with Battle, Jr., Rydz, Marquez, Sr. and others. It was during the period after Battle, Sr.'s release from prison that the organization was informally referred to by its members and others as the CORPORATION. A competing bolita organization was known as the COMPANY. The name "CORPORATION" was merely a label, among other labels, given to an international criminal organization involving a group of individuals and entities associated in fact. Rydz, Battle, Jr., and Marquez eventually assumed leadership positions until they

ceased taking illegal profits from the CORPORATION. For purposes of the bolita New York activities, the leadership of the organization and members of the organization may have changed but the organization remained ongoing through the date of the Indictment. The bolita organization, as originally started by Battle, Sr., continued in fact with the same goals and purposes under the later leadership of Luis Perez ("Perez"), Jose "Barbita" Guererro, Willie Poso, and others. The organization continued to use the label of the CORPORATION for purposes of identifying it from competing bolita organizations at least through 2003 when Perez was arrested on gambling related charges. There is no requirement that all personnel in an enterprise participate from the beginning to the end of the enterprise's existence. The "continuing unit" aspect of the enterprise may be found to exist even if there are "shifting associations" whose participants overlap to a sufficient degree. *United States v. Hewes,* 729 F.2d 1302, 1311–12 (11th Cir.1984) (RICO enterprise existed through "an informal, de facto association dedicated to the purpose of maintaining a network of interdependent fraud schemes.").[3]

volved. *id.* In this case, the Government did use the statutory definition in describing the CORPORATION. The fact that the label the "CORPORATION" started to be used in the 1980's, when, in fact, Battle, Jr., was a member, does not mean that the Superseding Indictment did not sufficiently allege that the CORPORATION acted through a group of individuals and entities associated in fact during the 1970's. In sum, I find no amendment and no variance. In any event, I have ruled that the early 1970's evidence is admissible only against Acuna.

3. In *United States v. Johnson,* 440 F.3d 832 (6th Cir.2006), the Sixth Circuit held that it does not read *Turkette* to hold that proof of the various separate elements be distinct and independent, as long as the proof offered is sufficient to satisfy both elements. 440 F.3d

at 840. It also cited to *Church* with approval that the common purpose of making money can support the enterprise element of a RICO conspiracy. *Id. Church,* 955 F.2d at 698 ("This circuit [Eleventh Circuit] has held that proof of an associations's devotion to making money from repeated criminal activity demonstrates an enterprises common purpose of engaging in a course of conduct, regardless of whether the criminal activity is diverse.") (citation and quotation marks omitted). In *United States v. Smith,* 413 F.3d 1253 (10th Cir.2005), the Tenth Circuit joined other circuits in holding that the Government establishes an enterprise when it proves three elements. Fist, the Government must prove the existence of "an ongoing organization with a decision-making framework or mechanism for controlling the group." (citations omitted). Second, the Government must prove "that the

### B. Admissions of Portions of Prior Trial Testimony of Charley Hernandez and Idalla Fernandez

I have previously considered and ruled on this matter of record on April 13, 2006. I incorporate that ruling here which commences on page 173 of the transcript. At that time, I ruled that the prior trial testimony of Hernendez and Fernandez from the trial of *State of Florida v. Jose Miguel, Battle, Sr.*, Case No. 76-26442, Circuit Court in and for Dade County, Florida, is admissible against Acuna who was not a defendant in that case.[4] I also concluded, for purposes of Fed.R.Evid. 804(a)(4) that Fernandez was not "available" as a witness because she was killed after the state trial against Battle, Sr. and prior to his retrial. Her death certificate was admitted in evidence. After a Rule 104 hearing where Hernandez appeared under a material witness warrant, I concluded, with the consent of the Defendants, that he was unable to testify because of his then physical and mental infirmity. I further found that the requirements of Fed. R.Evid. 804(b)(1) were met against Battle, Sr.[5] I also held that the trial testimony was admissible against Acuna on two separate grounds. First, I held that, under the authority of the Eleventh Circuit's decision in *United States v. Deeb*, 13 F.3d 1532 (11th Cir.1994), that the Hernandez and Fernandez testimony was admissible against Acuna under the residual hearsay exception [now Fed.R.Evid. 807] and *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). I discussed my reasoning in the transcript. Transcript of April 13, 2006, pp. 121–24. I further concluded that the United States Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) did not trump *Deeb* here because (1) both Hernandez and Fernandez were unavailable; and (2) Acuna had the opportunity to depose Hernandez and Fernandez in the state criminal proceedings, and offer the deposition testimony as part of the cross-examination read into the record in this case in addition to the cross-examination from the Battle, Sr. state trial. *Crawford* does not require, for Confrontation Clause purposes, that the prior cross-examination occur during trial so long as there is an opportunity for cross-examination. Thus, the opportunity to cross-examine at a preliminary hearing is sufficient. *California v. Green*, 399 U.S. 149, 165, 90 S.Ct. 1930, 1938–39, 26 L.Ed.2d 489 (1970) (where a defendant was represented by counsel and had an opportunity to cross-examine a trial witness at a preliminary hearing, the witness's preliminary hearing statements were admissible even if the witness was absent from trial). Accordingly, I concluded that the opportunity for cross-examination for *Crawford* purposes was provided by the trial depositions of Fernandez and Hernandez in the

---

various associates function as a continuing unit." (citation omitted). Finally, it must prove that the enterprise exists "separate and apart from the pattern of racketeering activity." *id.* at 1266-1267. For Rule 29 purposes, I conclude that the Government has sufficient demonstrated that all of these elements have been met in this case.

4. I also ruled that it was admissible against Defendant Battle, Sr. before he pled guilty during the pendency of this trial. The state case was brought against Battle, Sr. for conspiracy to murder Torres and solicitation of a felony. The jury found him guilty. The conviction was reversed by the Florida Third District Court of Appeals and remanded for a new trial. *Battle v. State of Florida*, 365 So.2d 1035 (Fla. 3d DCA 1979). Prior to the second trial against Battle, Sr. [and a first state trial against Julio Acuna], Fernandez was murdered while in protective custody and Hernandez fled. Battle, Sr. pled for "credit time served" and the charges were dismissed against Acuna for lack of evidence.

5. I found that the evidence was not admissible against Battle, Jr. and Marquez, Sr.

Acuna state criminal case. These depositions were taken for the purpose of impeaching their testimonies in the [then] upcoming Acuna state trial. The depositions were taken after their direct and cross-examination had occurred in the prior Battle, Sr. trial. Here, Acuna had the opportunity to use a portion of Fernandez's prior deposition as part of the cross-examination in this trial, but elected not to do so.

■ Second, I concluded that the prior testimony was admissible against Acuna under Fed.R.Evid. 804(b)(6). Transcript of April 13, 2006, pp., at 127–137. I adopt my prior rulings here. I held that the applicable requirements were met by a preponderance of the evidence. Based on my findings, I concluded that Acuna and Battle conspired to murder Fernandez to prevent her from testifying in the Battle, Sr. retrial and the Acuna state trial, regarding the murder of Torres and her own attempted murder. I further held by the preponderance of the evidence, that, as a result of that murder, Hernandez fled for his life and was not found by law enforcement until 2006, at which time he was incompetent to testify. I concluded that Battle, Sr. and Acuna's wrongdoing procured Hernandez's unavailability in that he feared that he too would be killed if he agreed to testify.[6] Given the unique circumstances, I held that Hernandez was "unavailable" by virtue of the misconduct of Battle and Acuna. After he fled, he had a massive heart attack and became infirm. His recent lack of diminished capacity does not remove the forfeiture through wrongdoing under Fed.R.Evid. 804(b)(6). Acuna should not benefit because Hernandez was recently found by law enforcement but cannot testify due to diminished capacity. Under *Crawford,* the rule of forfeiture by wrongdoing extinguishes Confrontation claims on essentially equitable grounds. 541 U.S. at 62, 124 S.Ct. at 1370. *United States v. Dhinsa,* 243 F.3d 635, 652–53 (2d Cir.2001), summarizing the law from various circuits, holds that Rule 804(b)(6) places no limitation on the subject matter of a declarant's statement that can be offered against a defendant at trial.[7]

### C. *Conspiracy to Commit Money Laundering as a Predicate Act*

An initial issue is whether a § 1956(h) money laundering conspiracy may be a predicate offense for a § 1962(d) RICO conspiracy. The issue is addressed in *United States v. Pungitore,* 910 F.2d 1084, 1134 (3d Cir.1990), where the Third Circuit held that RICO conspiracy under § 1962(d), and the predicate conspiracy, are distinct offenses with entirely different objectives.[8] The Third Circuit stated that:

> the objective of a RICO conspiracy is to 'assist the enterprise's involvement in corrupt endeavors. In contrast, the objective of the predicate conspiracy is confined to the commission of a particular substantive offense, in this case, individual acts of murder. A RICO conspiracy under 1962(d) based on separate conspiracies as predicate offenses is not merely a 'conspiracy to conspire' as al-

---

**6.** As Hernandez stated at his trial testimony in the Battle, Sr. trial, he talked to the police even before Fernandez was killed because "he was afraid for his life." Transcript from Battle, Sr. Trial, p. 736.

**7.** Notwithstanding this broad authorization, I carefully reviewed and ruled upon those aspects of the Hernandez/Fernandez trial testimonies that would be admissible at this trial.

Transcript of June 5, 2006, p. 124. I ruled on each of Acuna's objections. I adopt my rulings and reasoning here.

**8.** The Eleventh Circuit declined to follow *Pungitore* in *United States v. LeQuire,* 943 F.2d 1554, 1559 (11th Cir.1991) as it related to applying *Grady* to RICO. The Eleventh Circuit did not discuss or disagree with the decision for the principle stated.

leged by appellants, but is an overall conspiracy to violate a substantive provision of RICO.

(internal citations and quotations omitted).

■ A RICO conspiracy is substantially broader than an ordinary § 371 conspiracy. *United States v. Riccobene*, 709 F.2d 214, 224–25 (3d Cir.1983); *United States v. Sutherland*, 656 F.2d 1181, 1189–95 (5th Cir.1981); *United States v. Sutton*, 642 F.2d 1001, 1017 (6th Cir.1980) (en banc); *United States v. Elliott*, 571 F.2d 880, 902–03 (5th Cir.).

■ In *United States v. Ruggiero*, 726 F.2d 913, 915 (2d Cir.1984)[9], the conspiracy alleged involved an agreement to operate the Bonnano crime family through a pattern of racketeering activity that "consisted of 13 separate conspiracies to violate various state and federal laws involving the defendants in various combinations." The Second Circuit rejected the defendants' claim that this constituted multiple conspiracies: "Nor does a RICO conspiracy under 18 U.S.C. § 1962(d), supported by predicate acts of racketeering activity that in themselves are conspiracies, violate the prohibition of *Kotteakos v. United States*, [328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) ], which prohibits conviction of multiple conspiracies under an indictment charging a single conspiracy". *United States v. Elliott*, 571 F.2d at 900–902. A RICO conspiracy under § 1962(d) based on separate conspiracies as predicate offenses is not merely a "conspiracy to conspire", but is an overall conspiracy to violate a substantive provision of RICO, in this case § 1962(c), which makes it unlawful for any person associated with an interstate enterprise to "participate, directly or indirectly, in the conduct of such enter-

prise's affairs through a pattern of racketeering activity." *United States v. Zemek*, 634 F.2d 1159, 1170 n. 15 (9th Cir.1980).

*Ruggiero* demonstrates that a RICO conspiracy is broader than a conspiracy to commit a particular crime. *United States v. Barton*, 647 F.2d 224, 236–38 (2d Cir. 1981). *Ruggiero* also demonstrates that the fact that different persons agree, as part of the conspiracy, to commit different crimes, does not convert the single agreement to conduct the affairs of an enterprise through a pattern of racketeering activity into multiple conspiracies.

■ As further discussed below, the RICO statutes were amended . to add money laundering as a predicate act. Specifically, § 1961(1) defines "racketeering activity" to include "any act which is indictable under ... section 1956." Consequently, insofar as the enumerated statute, § 1956 (money laundering), includes, as of October 28, 1992, conspiracy as an indictable offense, money laundering conspiracy may properly be charged as a predicate act under a § 1962(d) enterprise conspiracy, without merely being a "conspiracy to conspire."

**D. Straddle Issues**

The Superseding Indictment charges a racketeering conspiracy that began on or about 1964 through the return of the original indictment on March 16, 2004. Given the significantly long span of the charged racketeering conspiracy, a number of issues have arisen relating to certain acts that the Government claims to have occurred prior to, or subsequent to, the dates of enactment of relevant statutes. The acts at issue are addressed in the Superseding Indictment and in the Bills of Particulars filed against the three remaining defendants, Jose Battle, Jr., Manuel Marquez, Sr. and Julio Acuna.[10]

---

**9.** The *Ruggiero* decision was abrogated by the United States Supreme Court in *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) as to the issue that RICO conspiracy convictions do not require an overt or specific act.

**10.** The Government acknowledges that the Bills of Particulars filed in this case essential-

The Superseding Indictment charges an enterprise conspiracy under Title 18, United States Code, § 1962(c). Both sections 1961 and 1962 became effective on October 15, 1970. "A pattern of racketeering activity" requires at least two acts of racketeering activity, one of which must have occurred after October 15, 1970, and the last of which must occur within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5). Several other dates of enactment are significant. Title 18 U.S.C. § 1956 (substantive money laundering) became effective on October 27, 1986. Title 18 U.S.C. § 1961(1)(B) was amended in 1986 to insert a Section 1956 offense (money laundering) as a "predicate act." This amendment took effect on October 27, 1986. The statute prohibiting conspiracies to launder money, § 1956(h), did not take effect, however, until October 28, 1992.

■■■ The Bills of Particulars [for Both Battle, Jr. and Manuel Marquez, Sr.] charge money laundering and conspiracy to launder money under Title 18, U.S.C. §§ 1956(a) and 1956(h). The dates of these acts vary between 1980 and to the date of the Indictment. Accordingly, for purposes of determining which can be a predicate act, it is critical to determine whether activities charged occurred prior or subsequent to October 27, 1986 (substantive money laundering) or October 28, 1992 (conspiracy to money launder). In addition, the type of predicate act involved is of critical importance. Substantive money laundering transactions are offenses completed at the time of the trans-

action. In other words, substantive money laundering is not a continuing offense. *United States v. Kramer*, 73 F.3d 1067, 1072–73 (11th Cir.1996) (each transaction or transfer of money constitutes a separate offense).

Accordingly, Defendants Battle, Jr. and Marquez, Sr. cannot be convicted based solely on conduct occurring prior to the enactment of the substantive money laundering statute on October 27, 1986, and the money laundering conspiracy statute on October 28, 1992. *United States v. Miranda*, 197 F.3d 1357, 1359 (11th Cir.1999) ("Miranda asserts, and we agree, that Count 1 improperly sought to convict him for conduct occurring prior to the enactment of the conspiracy statute [section 1956(h)]"). Such a conviction is a "naked ex post facto violation." *Id.*

In other words, the jury must be instructed that they can only check off those predicate acts in the verdict form that were charged in the Superseding Indictment, listed in the Bills of Particulars, and which the Government was able to prove the Defendants committed after the enactment of the relevant statutes. Thus, as to the substantive money laundering offenses set forth in the Bills of Particulars, the unlawful transaction must have occurred subsequent to October 27, 1986 to support conviction.

■■■ On the other hand, it is well established that a "[c]onspiracy is a continuing offense .... Where a crime is still being carried on and continued after the date when the act becomes effective, a statute imposing a greater penalty for conspiracy

ly limit the racketeering predicate acts contained in the Superseding Indictment to only those contained therein. Defendant Acuna's Bill of Particulars is silent as to any money laundering acts. Accordingly, his verdict form will not reflect any money laundering acts as potential predicate offenses. The jury will be instructed that they may not consider

any of the money laundering evidence against him. Additionally, because all of the money laundering acts listed in Manuel Marquez's Bill of Particulars are also listed in Battle, Jr.'s Bill of Particulars, the analysis here applies equally to both Defendants Battle, Jr. and Manuel Marquez, Sr.

does not violate constitutional prohibition of ex post facto laws." *United States v. Abrego,* 141 F.3d 142, 167 (5th Cir.1998) (internal quotations and citations omitted). In *Abrego,* the Fifth Circuit addressed the argument that the defendants' conviction under § 1956(h) violated the Ex Post Facto Clause if any of the conduct in furtherance of the conspiracy occurred before the statute's effective date. The Fifth Circuit found, based on the evidence, that the jury could reasonably conclude that the money laundering conspiracy continued after the effective date of § 1956(h). *Id.* It stated that, where many acts in a continuing offense occurred before the effective date of the statute criminalizing the continuing offense, the trial court must inform the jury of the effective date of the statute and instruct the jury that, in order to convict the defendant of the offense, it must find that the offense continued after the effective date of the statute. *Id.*

■ To the same effect, in *United States v. Hersh,* 297 F.3d 1233, 1244 (11th Cir.2002), the Eleventh Circuit held that: "The *ex post facto* clause is not violated ... when a defendant is charged with a conspiracy that continues after the effective date of the statute." The Eleventh Circuit further stated that: "To prove the continuation of a conspiracy, the government may provide evidence showing that an overt act occurred after the amendment of the statute." *Id.* The overt act must be something more than evidence of the conspiracy. It must constitute the execution or part of the execution of the conspiracy. *Id.* at 1245 (citing *Huff v. United States,* 192 F.2d 911, 915 (5th Cir.1951)). It is necessary, therefore, to " ... look to the elements of the offense described in the statute to determine whether an action constitutes an overt act." *Hersh,* 297 F.3d at 1245 (citing *United States v. Helmich,* 704 F.2d 547, 549 (11th Cir.1983) ("noting that overt acts consist of those acts prohibited by the statute as well as other legal acts done in furtherance of the conspiracy.")).[11] Battle, Jr. argues that since RICO conspiracy money laundering does not require an overt act, *Hersh* is inapplicable. I reject this argument and conclude that conspiracy to commit money laundering may be included as a predicate act so long as money laundering activities, in furtherance of the conspiracy, occurred after the effective date of the statute.

The straddle issue originally arose in this case based on the objection of Battle, Jr. to certain portions of the testimony of Orestes Vidan ("Vidan"). Battle, Jr. contended that evidence of money laundering that either pre-dated the enactment of the money laundering statutes or post-dated the allegations contained in the Bill of Particulars is not relevant and is barred by Fed.R.Evid. 403. I have overruled the objection and admitted the evidence. I have found it relevant to demonstrate Battle, Jr.'s ongoing participation in the charged RICO conspiracy and to establish the various RICO conspiracy elements, such as association and continuity. With respect to money laundering evidence that post-dates allegations contained in the Bill of Particulars, such evidence is also relevant to establish the various RICO conspiracy elements and to demonstrate Battle, Jr.'s ownership and control of the funds in question. Such evidence also gives the jury the necessary context for understanding the full evolution and extent

---

11. In *Hersh,* the jury instructions clarified that the jury was required to find that (1) Hersh willfully joined into the plan, knowing its unlawful purpose of traveling in foreign commerce to engage in a sexual act with a minor, (2) at least one of the overt acts of travel occurred after the effective date of the amended statute; and (3) the overt act of travel was "knowingly committed ... in an effort to accomplish some object of the conspiracy." *Hersh,* 297 F.3d at 1247.

of Battle, Jr.'s money laundering schemes. I also conclude, under a Fed.R.Evid. 403 analysis, that the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or the likelihood of misleading the jury. The same reasoning applies to Manuel Marquez, Sr. with regard to the money laundering charges against him.

 More specifically, regarding the money laundering activities that pre-date the effective dates of the statutes at issue, I find that the money laundering evidence is relevant to prove the enterprise's objective to "profit from and establish, operate, manage, facilitate, enhance, conceal, promote and protect the [enterprise] and its members, associates, activities and objectives." Superseding Indictment, ¶ 4. The Government argued convincingly that, because the money laundering was done with the intent to conceal the underlying activity of the enterprise and its members, the evidence would be relevant to prove the RICO conspiracy and its objectives. It is also relevant to establish other elements of the RICO conspiracy such as association between members of the RICO enterprise and the continuity of the enterprise. It constitutes intrinsic evidence to explain how the illegal gambling monies flowed from one entity to another and culminated in an overt act, or financial transaction, after the date of enactment of the relevant statute in furtherance of the enterprise conspiracy. Such evidence is relevant to "allow [ ] the jury to see the entire [money laundering] scheme and its results". *United ed States v. Dillman*, 15 F.3d 384, 391 (5th Cir.1994) (the defendants were convicted of conspiracy, bank fraud, money laundering, and other crimes committed as part of a scheme to improve artificially the financial condition of a savings and loan they managed. Defendants argued unsuccessfully that the district court committed reversible error by denying their motion to exclude evidence which they claimed was extrinsic. The Court held that the evidence of the path of the second $10 million which was not charged was inextricably intertwined with the overall criminal scheme, and, therefore, was admissible. The district court did not err in allowing the jury to see the entire scheme and its results).[12]

 Like the money laundering evidence that pre-dated the money laundering statutes, the money laundering activities that occurred after those events listed in the Bill of Particulars occurred are also relevant to show the continuation of the

12. I discuss below the issue associated with Battle, Jr. and Marquez, Sr.'s arguments relative to statute of limitations. In many ways, the straddle argument is analogous to their argument that evidence of acts occurring prior or to the statute of limitations period are not relevant and admissible. However, such arguments are routinely rejected because it is necessary for the jury to understand the context of the scheme developed by the defendants. *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 497 (7th Cir.2006) ("[S]tatute of limitation put time limits on when actions may be brought; they are not evidentiary rules that blind courts from consideration of relevant facts ... There is a distinction between acts that are prosecuted and acts that would be barred by the statute of limitations but are admissible to show that an act being prosecuted actually occurred"); *United States v. Barnes*, 230 F.3d 311, 315 (7th Cir.2000) ("Relevant pre-limitations evidence is admissible to show the existence of a scheme to complete an illicit transaction. Here, Barnes's pre-limitations activity was relevant to interpret the meaning of his call to the attorney to set up the emergency meeting"); *United States v. Wellman*, 830 F.2d 1453, 1464 (7th Cir.1987) ("The fact that the scheme, and acts committed in furtherance of it, may have extended over a period in part barred by the statute of limitations does not mean that they are irrelevant in determining whether mailings occurring within the statutory period were in furtherance of a scheme to defraud and thus proscribed by 18 U.S.C. § 1341.").

money laundering scheme to the present. The evidence is admissible to prove the overall scheme and the Defendants' participation in the conspiracy. As such, it is also intrinsic evidence. In addition, it is relevant for statute of limitations purposes.[13] *Huff v. United States*, 192 F.2d at 915 (" 'If [co-conspirators] do continue such efforts in pursuance of the plan, the conspiracy continued up to the time of abandonment or success.' It is this reasoning that lies behind the recognized rule that the statute of limitations ... runs from the last overt act during the existence of the conspiracy of which there is appropriate allegation and proof.") (citations omitted). Like the issue of activities that pre-dated the relevant statutes, the jury must be instructed that they may only consider those crimes listed in the Superseding Indictment and Bill of Particulars as predicate acts that occurred after the effective date of the statutes, and that the other evidence introduced (both before and after the predicate acts) is relevant only as to continuity and the nature and scope of each Defendant's participation in the conspiracy. *United States v. Gonzalez*, 921 F.2d at 1547 ("The trial judge in this case clearly instructed the jury to consider as predicates only those crimes so

listed in the indictment, and that other evidence introduced was limited to finding of continuity or the nature and scope of Roundy's agreement.").

### E. *Enterprise's Money Laundering Activities*

Defendants Battle, Jr. and Marquez, Sr. raise an additional issue as to whether money laundering, and conspiracy to money launder, may constitute predicate acts if it is shown that the "monies laundered" were actually their individual profits from the illegal bolita gambling of the CORPORATION, and no longer proceeds owned by the CORPORATION itself, as an enterprise. The short answer is "yes" because the Government has satisfactorily established by evidence beyond a reasonable doubt, as alleged in the Superseding Indictment, that Battle, Jr., Rydz and Marquez, Sr., are associates and members of the CORPORATION, and that they facilitated and carried out the goals and objectives of the enterprise to conceal illegally obtained money through various money laundering ventures, and, in so doing, concealed, promoted, and protected the CORPORATION and its members and associates.[14] In engaging in such endeavors, they also undertook to carry

---

13. The Defendants have raised statute of limitation defenses. The issues associated with these defenses are discussed below. The jury will be required to answer questions in the verdict form relative to these defenses.

14. In *United States v. Hudson*, 52 F.3d 326 (table), 1995 WL 234680 (6th Cir.1995)(unpublished), the defendant was charged with a RICO conspiracy dealing with prostitution. He argued that the racketeering acts which the jury found him to have committed were not related to the alleged prostitution enterprise. He contended that the financial structuring acts were for his own personal benefit and had nothing to do with any enterprise. The Sixth Circuit rejected this argument and stated: "Defendant argued to the jury that he committed the structuring offenses for his

personal benefit, not the benefit of the prostitution ring. The jury chose to believe that he was structuring the transaction to further the goals of the enterprise. The record contains sufficient evidence to support this finding." *id.* at *3. The same type of analysis has been made in the drug distribution area. In *United States v. Orozco–Prada*, 732 F.2d 1076 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984), the Court held that "a laundering service ... furthers the distribution of controlled substances by concealing the unlawful provenance of the funds thus keeping in business the purveyors of such substance." *See also, United States v. Barnes*, 604 F.2d 121, 154–55 (2nd Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980)(noting that "[i]mporters, wholesalers, purchasers of cutting materials,

out the goal and object of the CORPORA-TION, as pled in the Superseding Indictment, to prevent the detection of its criminal activities by laundering the money:

> through various means, including using the PUPPET COMPANIES, and the transfer and commingling of illegal funds through and with other funds and accounts, as well as the creation and perpetuation of 'sham' businesses, in-

vestments, and employment positions that appeared to be legitimate but were, in fact, a covert method of money laundering, all as an instrument to promote their illegal activities, conceal their illegal proceeds and avoid their reporting obligations as required by law.

Superseding Indictment, page 13.[15]

The point is that the Government has established that, at all relevant times, the

and persons who 'wash' money are all as necessary to the success of the venture as the retailer."). The same can be said for the subject illegal gambling enterprise at issue in this case. The "washing" of money is a necessary goal to the organization's continued success and its' efforts to avoid detection by law enforcement.

15. Battle, Jr. argues that the Superseding Indictment specifically alleges the CORPORA-TION'S involvement in illegal money laundering schemes through various businesses. He argues that he and Rydz did not take the CORPORATION'S assets and invest them for the benefit of or on behalf of the CORPORA-TION and its members. Nor did the evidence show that Battle, Jr. and Rydz took the proceeds they realized from the various entities and businesses and re-invested the profits in the CORPORATION. Battle, Jr. argues he is not charged with laundering his own personal funds for his own benefit. He points to specific places in the Superseding Indictment where the word "CORPORATION" was used in reference to the "offshore shelf corporations" and other money laundering activities. Accordingly, Battle, Jr. argues that the money laundering activities discussed at trial were outside the scope of the RICO conspiracy charged in the Superseding Indictment. He further argues that the money laundering activities listed in the Bill of Particulars were outside the scope of the enterprise conspiracy and had "no relation" with the enterprise charged. He narrowly defines the "enterprise" as the CORPORATION in New York, not Battle, Jr., and a changing roster of associates.

I reject Battle, Jr.'s contentions. I already discussed above that the Superseding Indictment broadly described the CORPORATION as an international criminal association known by various names, and, together with its leadership, membership and associates,

constituted the alleged enterprise. It was a "group of individuals and entities associated in fact." It was described as "an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the CORPORA-TION." So, the CORPORATION is not an incorporated legal entity but an association of individuals, members and associates as well as associated entities. It was alleged that the CORPORATION enriched its members and associates through various forms of illegal activity including acts of money laundering. It was alleged that the CORPORATION undertook all steps necessary to prevent the detection of its criminal activities, and sought to prevent and resolve the imposition of any criminal and civil liabilities upon the CORPO-RATION and its members and associates. It also alleged that **members and associates** of the CORPORATION did violate the money laundering laws of the United States through various means (emphasis added). Accordingly, I conclude that the Superseding Indictment is sufficiently broad to include Defendant Battle, Jr., as a member and associate of the CORPORATION who participated in the CORPORATION'S money laundering scheme to carry out its purpose of concealing its illegal proceeds and avoiding detection and prosecutions. Therefore, I find no variance between the CORPORATION'S alleged activities and the effort of Battle, Jr. to conceal his illegal gambling proceeds. A "variance" occurs when the evidence at trial establishes facts materially different from those alleged in the indictment. *Caporale*, 806 F.2d at 1499. I do not consider at this time the issue of prejudice.

Furthermore, I specifically reject Battle, Jr.'s argument that his predicate money laundering acts were not related to the enterprise charged and did not form a "pattern." I conclude that the money laundering acts fa-

CORPORATION, as an ongoing organization, consisted of various associates, functioned as a continuing unit, and was devoted to making money through illegal gambling and protecting that money by any means necessary. Rydz, Marquez, Sr., and Battle, Jr., as associates of the organization, continued to further those goals while they were active in the CORPORATION, and, even after they ceased receiving profits from the CORPORATION, continued to further the goals of the enterprise by concealing the money and protecting it, and thereby protecting themselves, from detection from law enforcement agencies. To "hide and conceal," and to cause to "hide and conceal," the illegal proceeds of an enterprise can be a legitimate purpose of a RICO enterprise conspiracy, together with those acts committed in furtherance of the conspiracy. *United States v. Caporale,* 806 F.2d 1487, 1513 (11th Cir.1986). Similar to the circumstances in *Church,* 955 F.2d at 698, "... the enterprise was devoted to making money from repeated criminal activity, and protecting that money by any means necessary."

Battle, Jr. argues that the evidence, at best, merely demonstrates, at best, that he money laundered for himself, and he points out that he was not charged with substantive money laundering in the Superseding Indictment. He claims that the Superseding Indictment only charges him with money laundering for the CORPORATION while he was a member. However, his views of the enterprise conspiracy and his role as a co-conspirator are too narrow. Likewise, he construes the Superseding Indictment and his Bill of Particulars too narrowly. I find no variance.

An enterprise can have diverse objects and there is rarely a problem determining that the diverse acts of a criminal conspiracy, as opposed to the acts of a predominantly legitimate enterprise, satisfy the statutory requirements. *United States v. Church,* 955 F.2d 688 at 698 (citing *United States v. Masters,* 924 F.2d 1362, 1367 (7th Cir.)). It is not essential for the Government to prove that Battle, Jr. actually laundered money for the enterprise itself, and that those profits were returned to the enterprise for further distribution, before

cilitated racketeering activities by securing them from detection. The two main goals of the enterprise conspiracy, as charged, were to make as much money as possible and not get caught. The structure of the money laundering statute, 18 U.S.C. § 1956, makes it "illegal to engage knowingly in acts involving illegally obtained money either to promote a criminal activity or to **conceal the source of the funds.**" *United States v. Abbell,* 271 F.3d 1286, 1294 (11th Cir.2001) (emphasis added). Consistent with the goal of the enterprise, the purpose of the money laundering activity can be to conceal the source of the funds. To constitute a predicate act of money laundering, it is not essential the Battle, Jr. engaged in illegal money laundering to "promote" the CORPORATION'S profits, as long as he laundered money distributed to him in a way that furthered the enterprise conspiracy by "concealing" the source of the funds.

The evidence sufficiently demonstrates beyond a reasonable doubt, for Rule 29 purposes, that various companies, such as Union Financial, Votaire, Danair, Aztec, and Stanara, were in existence and utilized by members of the enterprise, including Battle, Jr., Rydz and Manuel Marquez, Sr., before Battle, Jr., Rydz, and Marquez, Sr., ceased receiving gambling profits. The evidence sufficiently establishes that these companies were set up for the purpose of concealing the source of the illegal gambling proceeds received from the New York gambling businesses. As discussed above, the evidence is sufficient that predicate acts of money laundering, in furtherance of the concealment goal, occurred after the effective date of the relevant statutes. By way of analogy to the circumstances in *United States v. Bolinger,* 796 F.2d 1394, 1407–08 (11th Cir.1986), it was the nature of the large scale illegal gambling operations that: "... means will be needed to conceal the source of considerable illegal proceeds. Laundering is thus integral to the type of distribution conspiracy involved in this case."

money laundering can be a predicate act for a 1962(d) conspiracy. The goals and objectives of the enterprise may not necessarily be so limited.

Without doubt, Battle, Jr., Rydz, Marquez, Sr., and Battle, Sr. were among a core group of players in the enterprise, who shared several common purposes, and who participated in one overarching conspiracy. Here, the Superseding Indictment has alleged, and the Government has proven, that the enterprise, made up of these core participants and others, devoted itself to making money, protecting its ability to make money, and hiding the money so as to avoid detection by law enforcement. Avoiding detection was a major objective of the enterprise. The associates of the enterprise shared a common fear that detection by law enforcement could threaten the enterprise's ability to make money and could endanger its members if other members were caught and then cooperated with law enforcement in cases such as this one. The Government's evidence supports the significant extent to which enterprise members, including Battle, Sr., Battle, Jr., Rydz, and Marquez, endeavored to conceal their illegal gambling activities. They employed the same efforts to conceal the illegal proceeds distributed to them. They also used complicated money laundering schemes, involving third-party co-conspirators (including Mauerllo Marquez and Vidan), to hide their profits and thereby avoid detection by investing their illegal proceeds into purported legitimate businesses or off-shore accounts. Even when they were no longer active in the everyday affairs of the CORPORATION, it remained an ongoing organization with the same goals and objectives. The evidence supports that Battle, Jr., Rydz, Battle, Sr. and Marquez, Sr. continued to carry out an important goal and objective of the ongoing enterprise, namely to avoid detection by money laundering, and, in this manner, to protect themselves (and other enterprise members, both past and present) from potential prosecution for crimes committed while they were active members.

Additionally, Jose Battle, Sr., Marquez, Sr. and other co-conspirators, as members and associates of the CORPORATION, carried out these same goals by the "... development, construction, renovation, ownership, management, operation and planed sale and wind-up of the CRILLION and its assets, including a casino and hotel complex in Lima, Peru, all as an instrument to promote their illegal activities, conceal their illegal proceeds [from illegal gambling], and avoid their reporting obligations as required by law." Superseding Indictment, pages 13–14.

### F. *Commingling of Illegal Gambling "Personal Profits" In Legitimate Businesses*

■ For Rule 29 purposes, the Government has established that, in an effort to disguise the true nature, ownership and source of the proceeds that the Defendants derived through racketeering activity, they engaged in the purchase of a casino in Peru (Battle, Sr., Marquez, Sr. and others) and purchased (Battle, Jr. and Rydz) what otherwise would have been legitimate assets in the United States through the use of foreign accounts and corporations. The next issue is whether money laundering can occur subsequent to the enactment of relevant statutes if illegal gambling monies were invested and then re-invested along with legally earned monies in legitimate businesses. Based on the case law discussed below, the answer is that commingling illegal and legal monies taints all funds originating from the defendant, and that: "[t]he amount of illegal money that needs to be combined with another, larger amount of legal money need only be slight to render all the money commingled and,

therefore illegal. And, once the illegal and legal monies are commingled, no passage of time will remove the taint." *United States v. Abbell,* 271 F.3d at 1294–96. *See also United States v. Ward,* 197 F.3d 1076, 1083 (11th Cir.1999) ("The district court's theory that the passage of time and the large infusion of legal proceeds remove the taint from the illegal proceeds defeats the purpose of the money laundering statute and promotes money laundering schemes. Because money is fungible, the government must prove only that the tainted proceeds were commingled with other funds.").

In *United States v. Majors,* 196 F.3d 1206 (11th Cir.1999), the Eleventh Circuit determined the sufficiency of the evidence to support a money laundering conviction where: "[i]n an elaborate shell game, appellants moved ill-gotten funds in and out of various corporate bank accounts," which was "designed to make the funds ultimately enjoyed by appellants appear as legitimate income not derived from the company" though which they had engaged in illegal conduct. *Id.* at 1213. In upholding the conviction, the Eleventh Circuit stated, in a manner pertinent here, "Evidence that may be considered when determining whether a transaction was designed to conceal includes ... structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; a series of unusual financial moves culminating in the transaction ...." *Id.* at 1213 n. 18 (citing *United States v. Garcia–Emanuel,* 14 F.3d 1469, 1475–76 (10th Cir.1994)).

For Rule 29 purposes, the Government has sufficiently established that the Defendants utilized off-shore corporations in the names of nominees, which enabled them to purchase assets in the United States in their own names, and sell and re-purchase assets, all in an effort to disguise their ownership of the proceeds and to legitimatize the profits which they had derived from other illegal gambling. As noted in *Majors,* the fact that Defendants commingled their illegally-derived proceeds with what was purportedly legitimate assets may be considered by the jury as further evidence that the transactions were designed to conceal the illegal source of funds and their ownership in the foreign entities. *Majors,* 196 F.3d at 1214.

For purposes of proving a predicate act, the Government is not required to trace the origin of all funds used in each of the businesses to determine exactly which funds were used for what transaction. The Eleventh Circuit has so held in *United States v. Cancelliere,* 69 F.3d 1116, 1120 (11th Cir.1995). The Eleventh Circuit reasoned that the statute requires that a transaction "involve" the proceeds of an activity which the participant knows is unlawful. *Id.* The Eleventh Circuit adopted the Seventh Circuit's reasoning that the word "involve" does not obligate the Government to trace the origin of all funds deposited into a bank account to determine exactly which funds were used for what transaction. *Id.* The Eleventh Circuit held that: "Section 1956(a)(1)(A)(1) allows for convictions where the funds involved in the transaction are derived from a commingled account of which only a part comes from 'specified unlawful activities.'" *Id.* at 1120. I will include such jury instructions consistent with this Eleventh Circuit case law.

### G. *Statute of Limitations Issues*

In *United States v. Starrett,* 55 F.3d 1525, 1550 (11th Cir.1995), the Court set forth the well-settled law as to the duration of a defendant's participation in a RICO conspiracy, and the legal requirements for an affirmative defense of with-

drawal from the conspiracy. The Court begins with the premise that participation in a conspiracy is presumed to continue until all activity relating to the conspiracy is ceased. *Id.* Accordingly, each defendant is presumed to be a participant for the duration of the conspiracy unless he can overcome the presumption by providing his withdrawal. *Id.* A conspiracy may be deemed to continue as long as its purposes have neither been abandoned nor accomplished. *Id.* Thus, to establish the affirmative defense of a withdrawal from the conspiracy, the defendant has the substantial burden of proving: (1) that he has taken affirmative steps, inconsistent with the objectives of the conspiracy, to disavow or to defeat the objectives of the conspiracy; and (2) that he made a reasonable effort to communicate those acts to his co-conspirators or that he disclosed the scheme to law enforcement authorities. *Id.* Thus, " 'A mere cessation of activity in the conspiracy is not sufficient to establish withdrawal.' " *Id.*

In *United States v. Harriston*, 329 F.3d 779, 783 (11th Cir.2003), the Eleventh Circuit expanded upon these principles by re-emphasizing that the Government satisfies the requirements of statute of limitations for a non-overt act conspiracy [i.e. RICO],[16] if it alleges and proves that the conspiracy continued into the limitations period. Although the RICO statute contains no time limit provision for criminal prosecutions of racketeering conspiracies, the Eleventh Circuit, in *Harriston,* applied the general five-year statute of limitations contained in Title 18, U.S.C. § 3282. *Id.* Thus:

> An accused conspirator's participation is presumed to have continued until all objects of the conspiracy have been accomplished or until the last overt act has

been committed by any of the conspirators. However, if a conspirator establishes the affirmative defense of withdrawal, the statute of limitations will begin to run at the time of the withdrawal. Otherwise, the statute will not begin to run until the final act of the conspiracy has occurred.

*United States v. Arias,* 431 F.3d 1327, 1340 (11th Cir.2005) (internal citations omitted).

Here, insofar as the original indictment was returned on March 16, 2004, the Government must establish that the conspiracy continued until within five years of March 16, 2004. The Government argues, for Rule 29 purposes, that the enterprise's illegal gambling conspiracy continued, for continuity purposes, through 2003 based upon the wiretap evidence and the testimony of Luis Perez. The evidence also shows that the organization continued to refer to itself as the CORPORATION. The Government relies on this evidence to refute the claim that the CORPORATION terminated its existence at the time that Battle, Sr. and Marquez, Sr. stopped receiving profits from the New York gambling operations. The Government essentially argues that the Defendants never abandoned the enterprise's goal to conceal a considerable amount of the illegal proceeds through money laundering efforts. *United States v. Arnold,* 117 F.3d 1308, 1314 (11th Cir.1997) ("Because 'it is the nature of large scale drug dealings that means will be needed to conceal the source of considerable illegal proceeds,' we found laundering to be an integral part of the conspiracy.") (citing *United States v. Bolinger,* 796 F.2d at 1408 (11th Cir.1986)). It also furthers the goal of the enterprise of concealing the underlying illegal activity

---

**16.** For instance, a conviction for conspiracy to commit money laundering does not require proof of an overt act in furtherance of the conspiracy. *Whitfield v. United States,* 543 U.S. 209, 125 S.Ct. 687, 160 L.Ed.2d 611 (2005).

that generated the ill-gotten gains. *United States v. Carter*, 721 F.2d 1514, 1527 (11th Cir.1984), *vacated in part on other grounds, U.S. v. Lightsey*, 886 F.2d 304 (11th Cir.1989) (citing *United States v. Turkette*, 452 U.S. 576, 591, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). In this manner, the "senior" equity partners in the organization, once retired, can then shift more of their attention to legitimizing their ill-gotten gains without danger of "being caught." According to the Government, for these reasons, Rydz and Battle, Jr. used foreign shelf corporations and bank accounts to finance their investments in Union Financial and a host of other clothing companies; and Battle, Sr., Marquez, Sr., and Luis DeVilliers, who was also in the New York illegal gambling business, financed a legal casino in Peru.

Battle, Jr. argues that he and Rydz "dropped out" of the enterprise conspiracy in 1988 after Battle, Sr.'s brother's funeral, when they announced that they would no longer receive profits from the New York gambling enterprise. They took no other affirmative acts inconsistent with the conspiracy. They did not advocate that the conspiracy should cease or that others should leave. Nor did they cease their money laundering activities. Ultimately, their affirmative defense of "withdrawal," will be decided by the jury on the basis of all the evidence. *United States v. Jimenez*, 622 F.2d 753, (5th Cir.1980) ("Our conclusion that there existed a question of fact as to the meaning of Jimenez' actions, even under the United States Gypsum standard, applies also to the motion for acquittal at the end of all the evidence");

*United States v. Diaz*, 176 F.3d 52, 98 (2d. Cir.1999) (holding that the issue of whether a defendant's incarceration establishes withdrawal from the conspiracy must be decided by the jury in light of all the evidence).

Because the facts relating to Defendants' affirmative defense of withdrawal and statute of limitations are inevitably bound up with the evidence pertaining to the conspiracy itself, those issues cannot be decided as a matter of law. Even if I was permitted to decide the issue at the Rule 29 stage as a matter of law, I would decline to do so based on the facts presented by the Government. A determination of when a conspiracy ends, or when a defendant withdraws, requires scrutiny of all of the pertinent facts in each case, including the scope of the conspiratorial agreement. In order to determine the objects, it is necessary to look to the conspiratorial agreement, the relevant contours of which are charged in the Superseding Indictment. *Pippin*, 903 F.2d at 1481. Battle, Jr. may not rely on the single act of retirement to establish withdrawal.[17] Because Battle, Jr. was involved in a continuing conspiracy, the mere act of retirement is not alone sufficient to defeat all of the objects of the conspiracy. *United States v. Nixon*, 918 F.2d, 895, 907 (11th Cir.1990) (non-participation insufficient to establish withdrawal where circumstances made it foreseeable that conspiracy would continue). Because the Government has shown that Battle, Jr. continued to further the enterprise's goals of money laundering its member's illegal profits, and did not withdraw from that

**17.** In *Heller v. Plave*, No. 89–0639–CIV–ATKINS, 1993 WL 557846, at *11–12 (S.D.Fla. Aug.2, 1993), the defendants had conspired to deprive the plaintiff of a defense to a criminal IRS investigation. One defendant claimed that he withdrew from the conspiracy by virtue of the fact of his retirement. The district court rejected the defendant's position, finding that the fact of retirement alone did not absolve the defendant because he was part of a continuing conspiracy that he set into motion and he did nothing to stop the objectives from being realized. Also, the defendant did not report his separation from the conspiracy to anyone, and he remained in contact with his co-conspirators.

aspect of the enterprise conspiracy, his withdrawal amounted to "[a] mere cessation of activity in [one aspect] of the conspiracy [which] is not sufficient to establish withdrawal." *United States v. Finestone,* 816 F.2d 583, 589 (11th Cir.1987); *LeQuire,* 943 F.2d at 1564 ("Ward continued to cover up for the enterprise even after his involvement in the smuggling operation itself had allegedly ceased. Thus, we must affirm the district court's decision that the case against Ward was not barred by the statute of limitations.").

■ I conclude that the jury could well find that the money laundering acts of concealment were done in furtherance of one of the main criminal objectives of the conspiracy and continued as such during the five year period prior to the Indictment. Likewise, the jury could well find that, following his money laundering in Peru, Marquez, Sr. failed to make a reasonable effort to communicate his withdrawal to his co-conspirators and that he failed to disclose the CORPORATION'S criminal schemes to law enforcement. "The accused participant is not required to notify 'each other member' that he will no longer participate, but the acts of withdrawal must be 'communicated in a manner reasonably calculated to reach co-conspirators.'" *United States v. Arias,* 431

F.3d at 1341 (quoting *United States v. Gypsum Co.,* 438 U.S. 422, 464–65, 98 S.Ct. 2864, 2887, 57 L.Ed.2d 854 (1978)). Marquez may not merely rely on his physical distance from, rather than his repudiation of, the actions of his co-conspirators. *United States v. Dabbs,* 134 F.3d 1071, 1083 (11th Cir.1998).

### H. Predicate Acts Subject to Rule 29 Analysis; Exclusion of Certain Evidence or Limiting Instructions; James Ruling

Before addressing the *James* analysis with respect to Fed.R.Evid. 801(d)(2)(E), it is first necessary to determine if any portion of that evidence should first be excluded for reasons unrelated to Rule 801(d)(2)(E). Preliminarily, I already have discussed above the admission of evidence concerning acts before and after the enactment of money laundering statutes. Even if evidence is not admissible to prove the defendant joined the conspiracy with the specific intent to personally participate in the commission of two predicate acts as charged in the Superseding Indictment and Bills of Particulars, the evidence still may be relevant for other RICO purposes, such as establishing proof of the "enterprise," or proof that the defendant "associated" with the enterprise.[18] The evidence

---

18. Regarding proof that a defendant, at the time he knowingly and willfully agreed to join the conspiracy, did so with the specific intent to personally participate in the commission of two "predicate offenses," the Government must still establish that the two predicate offenses were part of a "pattern of racketeering activity." Section 1961(5) provides that a "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after October 15, 1970 and the last of which occurred within ten years after the commission of a prior act of racketeering activity." The element of the offense which requires that the defendant participated in the enterprise "through a pattern of racketeering activity" has two components: (1) the defendant's predicate act which he

specifically intended to personally participate in were related to the enterprise charged (the "relationship requirement"); and (2) the two predicate offenses formed a pattern ("the pattern requirement"). *Starrett,* 55 F.3d at 1542; *Church,* 955 F.2d at 693. The first element requires that the facilities and services of the enterprise were regularly and repeatedly utilized to make possible the racketeering activity. *Id; United States v. Carter,* 721 F.2d at 1527. The second requirement, the "pattern requirement," requires proof that the predicate acts are related to each other and have continuity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Predicate acts are related to each other if they have the same or similar purposes, results, participants, vic-

may also be admissible as "inextricably intertwined" with the RICO conspiracy and therefore necessary to tell the jury the "full story."

With these standards in mind, I nonetheless exclude the following evidence against the following defendants: (1) the Torres murder is admissible only against Defendant Acuna as an alleged predicate act, and is not admissible against Defendants Battle, Jr. and Defendant Marquez, Sr., for any purpose consistent with the Superseding Indictment and the applicable Bills of Particulars; (2) the Peru money laundering evidence (including Government's Exhibit 661) [tape recording] is admissible only against Defendant Marquez, Sr. as an alleged predicate act and is not admissible against Defendants Battle, Jr. and Defendant Acuna for any purpose consistent with the Superseding Indictment; (3) the offshore and Florida money laundering evidence is admissible against Defendants Battle, Jr. and Marquez Sr.'s and not against Defendant Acuna for any purpose; (4) the Omar Broche murder is stricken as a predicate act as Marquez Sr., Battle, Jr., and Acuna; (5) the "Palulo" murder is stricken as a predicate act against Battle, Jr. and Acuna; and (6) the predicate acts based on gambling activity may not be charged against Marquez and Battle, Jr. once they no longer received gambling profits.[19] The gambling activities of the CORPORATION that occurred after that date would be admissible for other purposes, however, such to prove the continuity of the enterprise. I reserve, however, on Marquez Sr.'s Rule 29 motion on the "Palulo" murder as a predicate act. I am striking all the Florida bolita gambling evidence against the three remaining

Defendants because that evidence has not been established beyond a reasonable doubt, even as against Battle, Sr. I conclude that the Government has not established beyond a reasonable doubt that the monies used to finance the casino in Peru came from the Florida bolita gambling as compared to the New York bolita gambling. Based on the Government's stipulation, the evidence pertaining to the death of Fernandez is stricken as against Acuna, Battle, Jr. and Marquez, Sr. For reasons I have already explained, evidence relevant to the New York bolita gambling is admissible against Defendants Battle, Jr., Marquez, Sr. and Acuna, for purposes relating to the ongoing and continuous nature of the enterprise, even after the time that Battle, Jr. and Marquez, Sr. ceased receiving illegal bolita gambling profits.

On June 13, 2006, the Government has introduced pleadings setting forth the predicate acts which the United States submits have been sufficiently established as to Julio Acuna, Manuel Marquez, and Jose Miguel Battle, Jr. First, I dismiss and strike from the Bills of Particulars any predicate acts which are not now included on the Government's June 13, 2006 pleadings. Second, I further strike from the Government's June 13, 2006 pleadings those predicate acts marked as stricken on Attachment One to this Order. I find that the Government, under the applicable Rule 29 test, has failed to establish evidence beyond a reasonable doubt, with all inferences in its favor, to support that the named defendants agreed personally to commit the predicate act at issue. I further discuss below my reasons for these rulings. Third, I reserve on the Rule 29

---

tims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. *Id.; Starrett,* 55 F.3d at 1543. Accordingly, the Government may introduce evidence related to these requirements.

19. Likewise, the alleged gambling activities against Marquez, Sr. cannot be charged until he entered the conspiracy.

motions on certain predicated acts as indicated on Attachment One.

■ With regard to Rule 801(d)(2)(E) and *James* criteria, I have required during the trial that each witness offering a Rule 801(d)(2)(E) statement provide a proffered statement.[20] During the trial, I required that those statements be certified prior to the witness's testimony. I admitted portions of the testimony based on the additional proffer, and I prohibited other portions of the testimony (for reasons stated of record). I now conclude that the Government has established by a preponderance of the evidence that the applicable trial testimony and tape recordings met the requisite standards that an enterprise conspiracy existed for the purposes of conducting a bolita gambling operation in New York; that each declarant and defendant were members of the conspiracy; and that the statements and tapes were made during the course and in furtherance of the conspiracy. In making this determination, I have considered both the hearsay statements themselves and other independent documentary evidence which I have admitted of record.[21] Except as I stated of record at trial, and I have clarified above, a co-conspirator's statement is admissible against members of the conspiracy who joined after the statement was made. *United States v. Tombrello,* 666 F.2d 485, 491 (11th Cir.1982). Battle, Jr. argues, however, that the admission of statements of co-conspirators are not admissible against him after he withdrew from the conspiracy. *United States v. Nerlinger,* 862 F.2d 967, 974–75 (2d Cir.1988). While this is a correct statement of law, I find, for purposes of Rule 801(d)(2)(E) purposes that, by the preponderance of the evidence previously discussed, that Battle, Jr. had not withdrawn from the conspiracy.

## I. Predicate Acts, Collection of Unlawful Debt and the Government's Bill of Particulars

■ The Supreme Court has made clear that the conspiracy offense of 18 U.S.C. § 1962(d) has lesser proof requirements than the substantive RICO offense under § 1962(c). "The RICO conspiracy statute, § 1962(d), has broadened conspiracy coverage by omitting the requirements of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove each conspirator agreed that he would be the one to commit two predicate acts." *Salinas v. United States,* 522 U.S. 52, 64, 118 S.Ct. 469, 477, 139 L.Ed.2d 352 (1997). Rather, the Government can show an agreement to participate in a RICO conspiracy in one of two ways: (1) by providing evidence that the defendant agreed to commit two predicate acts ["Prong One"}], or (2) by producing evidence that the defendant agreed to the overall objective of the conspiracy ["Prong Two"]. *United States v. Abbell,* 271 F.3d 1286, 1299 (11th Cir.2001); *Harriston,* 329 F.3d at 785 (11th Cir.2003). "If the government can prove an agreement on an

---

**20.** I required a general proffer from the Government prior to trial. The issue was subject to substantial briefing and oral argument.

**21.** The Rule 801(d)(2)(E) statements of record that I have admitted include those of Consuelo Alvarez, Abraham Rydz, Ramon Hechavarria Jorge Oscar Roque, Luis Perez and tape records associated with enterprise bolita gambling; Hans Bunte, Francisco Quandusand, Felix Fefer, Fredo Chau, Samy Fefer, Harold Marchena, Jasobo Van Der Linden, Mario Masaveu, Salvador Ramirez, Hubert Salazar, Angela Maria Carrodeguas–Gonzalez, Luis De Villiers, S.R., Sara Pinon, Orestes Vidan, Oracio Altuve, Pedro Perez (DeVilliers' partner in New York bolita gambling) and Willie Diaz. I also made specific finding of record with regard to Government Exhibits, 687(a), 687(b), 687(c), 687(d), 688, 688(a) for Rule 801(d)(2)(E) purposes against Defendant Marquez, Sr. I adopt these findings and conclusions here. See Trial Transcript, May 1, 2006.

overall objective, it need not prove a defendant personally agreed to commit two predicate acts." *Abbell,* 271 F.3d at 1299. And regardless of how the Government proves the agreement to the overall objective, it does not necessarily have to show that the defendant explicitly agreed with his co-conspirators to commit the substantive RICO crimes as described in the indictment, or that the conspirator knew all the other coconspirators, or was aware of all of the details of the conspiracy. *United States v. To,* 144 F.3d 737, 744 (11th Cir. 1998).

The court in *To* held that, "[t]o establish a RICO conspiracy, the government needed to prove that Tam Minh Le and Pham 'objectively manifested, through words or actions, an agreement to participate in ... the affairs of [an] enterprise through the commission of two or more predicate acts.'" *Id.* at 744 (citations omitted). The *To* decision further stated: " '[t]he focus is on the agreement to participate in the enterprise through the pattern of racketeering activity, not on the agreement to commit the individual predicate acts.'" *Id.* (citation omitted).

The Government in this case could have proven the Defendants' agreement to participate in either of two ways. The Government could have shown an agreement on an overall objective. "An agreement on an overall objective may be proved 'by circumstantial evidence showing that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity.'" *Id.* The Government could also have attempted to prove that each Defendant agreed personally to commit two predicate acts and therefore to participate in a "single objective" conspiracy. *Id.* The important point emphasized in *To* under the "single objective" test is that the Government needs to show the Defendants' "agreement to commit personally two predicate acts." *Id.* at 746. With regard to the single object conspiracy theory, the Government's obligation to prove that the Defendants committed the two predicate acts satisfies the "pattern of racketeering" element necessary for a conviction under § 1962(d). *Gonzalez,* 921 F.2d at 1540. *See also Church,* 955 F.2d at 695 (in the context of a "single objective" conspiracy, "[t]he existence of the conspiracy agreement can be inferred from 'the conduct of the alleged participants or from the circumstantial evidence of the scheme.'") (citations omitted); *Carter,* 721 F.2d at 1530 ("In a case of this type, the trial court must instruct the jury that an essential element of a RICO conspiracy charge is an agreement to participate in the enterprise's affairs by personally committing, or agreeing to personally commit, two or more predicate acts.").

The original Bills of Particulars against Defendants Battle, Jr., Marquez, Sr. and Acuna, (as modified in Attachment One), charged that each agreed to personally participate in the commission of two (or more) predicate acts, and that each had the specific intent to personally participate in the commission of two or more predicate offenses. Accordingly, the Government cannot prove the RICO conspiracy based on a pattern of racketeering activity unless it satisfies beyond a reasonable doubt that the Defendants each agreed to commit two predicate acts. It may not prove the conspiracy merely by providing evidence that the Defendants agreed to the overall objective of the conspiracy. The situation is different, however, with regard to the second theory of liability under the Superseding Indictment, namely, collection of unlawful debt. I now discuss this aspect of the Superseding Indictment.

By prior order dated March 3, 2006, I denied Battle, Jr.'s motion to strike as surplusage Paragraph 11 of the Superseding Indictment which alleges an alternative

theory of liability—that is, "acts of collecting, and aiding and abetting in the collection of, unlawful gambling debts incurred and contracted in gambling activity . . . ." I left undecided, however, the question of how the Government may prove liability.

Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through . . . . collection of an unlawful debt." Pursuant to § 1961(6), as applicable here, unlawful debt means, "a debt incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision, and which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof." (emphasis added). Unlike "pattern of racketeering" RICO, the Government need only prove one act of collecting an unlawful debt to secure a conviction. *United States v. Pepe*, 747 F.2d 632, 661 (11th Cir.1984).

■ In considering the matter, I first address whether the Government is barred from arguing that the "second prong" analysis for a RICO conspiracy to collect an unlawful debt because of the position taken under the "first prong analysis" in its Bills of Particulars relating to "pattern of racketeering and predicate acts." I conclude that it is not barred. I did not require the Government to further explicate its alternative liability theory in the required Bills of Particulars. This was because there was no need to do so. The Superseding Indictment charging ". . . [the collection of an unlawful debt] is sufficient for constitutional purposes if it articulates in statutory language the elements of the violation." *United States v. Martell*, 906 F.2d 555, 558 (11th Cir.1990)(citing *United States v. Alvarez–Moreno*, 874 F.2d 1402,

1410 (11th Cir.1989), *cert. denied*, 494 U.S. 1032, 110 S.Ct. 1484, 108 L.Ed.2d 620 (1990)). Here, the Government sufficiently followed the statutory language in the Superseding Indictment. Its allegations falls under the "Racketeering Conspiracy" count and stated that it was the "Second Alternative Grounds (sic) of Liability." Its placement in the Superseding Indictment put the defendants on notice that the Government would put on evidence regarding their collection of unlawful gambling debts at trial.

■ The second question is whether the Government may rely on a "second prong" theory of liability with regard to the collection of an unlawful debt under Section 1962( c) and (d). Admittedly, there is a dearth of case law regarding RICO claims involving the collection of unlawful debt. *See United States v. Vastola*, 670 F.Supp. 1244 (D.N.J.1987)(citing *United States v. Pepe*, 747 F.2d 632, 673 (11th Cir.1984))("Prosecutions under the unlawful provisions are rare."). Nonetheless, the case law supports that there may be two Section 1962(c) counts in an indictment-one based on a "pattern of racketeering" and one based on an unlawful debt collection. *United States v. Pepe*, 747 F.2d at 659. Participating in the affairs of an enterprise through the collection of an unlawful debt is an alternative ground for imposing liability, and the Government is not required to prove a "pattern of racketeering" in such cases.

Given the Section 1962(c) statutory language referring to " . . . [c]onduct or participate, *directly* or *indirectly* in the conduct of the affairs of the enterprise through a pattern of racketeering activity or the collection of unlawful debt," I conclude that the two prong analysis is appropriate. It is the "direct" or "indirect" reference with regard to conducting or participating through a pattern or racketeering activity that has lead to the two

prong analysis regarding "predicate" acts. Since the same language applies to collection of an unlawful debt, it follows that a two prong analysis would apply in that context as well. Thus, a defendant can be held liable for conspiracy under RICO if he or she was directly involved or indirectly involved with the conspiracy, regardless of whether or not they are "generals" (i.e. giving the orders to others to make the collections) or "foot soldiers" (i.e. physically collecting the debts for the enterprise). *See generally, United States v. Vastola,* 899 F.2d 211 (3rd Cir.1990)(although the Court concluded there was insufficient evidence to show Vastola had actually participated in, or supervised, an actual debt collection, Vastola was properly convicted of RICO conspiracy because he was aware of one debt collection and encouraged co-conspirators to collect it); *United States v. Oreto,* 37 F.3d 739 (1st Cir.1994), *cert. denied,* 513 U.S. 1177, 115 S.Ct. 1161, 130 L.Ed.2d 1116 (1995)("A person may be found to conduct or to participate in the conduct of an enterprise even though he is a mere employee having no part in the management or control of the enterprise and no share in the profits.").

In sum, for Rule 29 purposes, the Government acknowledges that it must prove that, at the time Battle, Jr., Acuna and Marquez, Sr. joined the conspiracy, each did so with the specific intent to personally participate in the commission of two "predicate offenses." I now hold that the Government may prove that Battle, Jr., Acuna and Marquez, Sr. May have violated Section 1962(d) with regard to collection of unlawful debt either by agreeing to personally participate in the collection of an unlawful debt, or by showing that the defendant specifically intended to otherwise participate in the affairs of the "enterprise" with the knowledge and intent that other members of the conspiracy would conduct or participate in conducting the enterprise's affairs through collection of unlawful debt.

Applying these principles, I find, for Rule 29 purposes, the evidence sufficiently establishes that Battle, Jr. and Marquez, Sr. joined the conspiracy with the specific intent to personally participate in multiple acts of illegal gambling and the collection of an unlawful debt by "foot soldiers." They did so as bankers and owners of the gambling debts. The evidence also is sufficient that Acuna specifically joined the conspiracy to enforce the collection of unlawful debt.

In addition, the evidence is sufficient to establish that, during the pendency of the conspiracy, Battle, Jr., Marquez, Sr. and Acuna specifically agreed to personally participate in two or more predicate acts. The Government may proceed on these predicate acts even though they occurred after each defendant joined the conspiracy. The RICO statute is not so limited as to preclude liability for serious crimes merely because the specific intent to commit them occurred after the defendant joined the conspiracy.

Nevertheless, the evidence is insufficient to establish that Battle, Jr. specifically agreed to participate in the multiple acts of arson, the murders associated with the arsons, or the murder of Omar Broche.[22] As to Marquez, Sr., it is not necessary that the Government show that he agreed to personally participate in the

---

**22.** The Government offers the Broche murder as a predicate act only against Defendant Marquez. As to remaining predicate acts involving Jose "Palulo" Enriquez, and the charged arsons and resulting murders, I conclude, after careful consideration of the Government's arguments at the June 15 Rule 29 hearing, that, even with all inferences in its favor, it has failed to establish that Battle, Jr. agreed to personally participate in these predicate acts. The Government argues that it has made a sufficient showing under the definition of "racketeering activity" under Section

commission of these additional predicate acts when he first joined the conspiracy. The evidence sufficiently established that Marquez Sr.'s role in the conspiracy significantly evolved after he first joined. As noted in *Starrett,* 55 F.3d at 1552, "[T]he focus of the RICO conspiracy statute is not on why the defendant associates with the enterprise, but on what he does or agrees to do, while associated with it." (emphasis added). It is sufficient if his agreement to participate in the commission of additional predicate acts occurred in close temporal proximity with his joining the conspiracy. "We conclude that predicate acts occurring in close temporal proximity may satisfy RICO's pattern requirement if 'the predicates themselves amount to, or . . . otherwise constitute a threat of continuing racketeering activity.'" *Id.* at 746 (citations omitted).

1961(A), but I conclude otherwise. Even if the Government had argued a "Second Prong" theory of liability consistent with that definition, I would still conclude it has failed to sufficient prove its case against Battle, Jr. [for Rule 29 purposes] with regard to the arsons and murders. I reach the same conclusion with regard to Marquez, Sr.'s alleged participation in the homicide of Omar Broche. The evidence, with all inferences in favor of the Government, fails to establish his agreement to personally participate in the murder.

Battle, Jr. also argues that I should strike from the revised Bills of Particulars the predicate acts based on substantive money laundering relating to Union Financial Research and Voltaire Trading. Battle, Jr. argues that the Government amended the original Bill of

WHEREFORE, it is **ORDERED** that the Defendants' Rule 29 motions are ruled upon consistent with this Order. The Government shall conform the evidence for the jury consistent with this Order.

## ATTACHMENT ONE

### *UNITED STATES' NOTICE RE: PREDICATE OFFENSES JOSE MIGUEL BATTLE, JR. AGREED TO PARTICIPATE IN*

The United States of America, by and through the undersigned Assistant United States Attorneys, and pursuant to this Court's request, hereby gives notice of the following predicate offenses which the United States submits have been sufficiently established as to Jose Miguel Battle, Jr. and which should be submitted to the jury for consideration:[1]

Particulars by referencing activities that occurred after the effective date of the substantive money laundering statute. The Government argues that it did not amend the Bills of Particulars because the original Bills of Particulars was based upon "approximate dates." At worst, the Government argues that the evidence after the effective date constitutes a "variance." I reserve on this matter since I still must determine if the change constitutes an amendment or a prejudicial variance under *United States v. Reed,* 887 F.2d 1398 (11th Cir.1989) and *United States v. Narog,* 372 F.3d 1243 (11th Cir.2004).

1. All of the predicate offenses listed below are contained in the United States' Bills of Particulars filed in the instant case. The United States has removed those which it believes should not be submitted to the jury.

| Predicate Objective | Nature | Statute(s) | Location(s) | Date(s)[2] |
|---|---|---|---|---|
| acts and threats involving gambling | bolita/numbers/lottery | 18 USC §1961(1)(A) NY Penal Law §225 | NYC, NY | 1974-2001 |
| acts and threats involving gambling | illegal gambling machines | 18 USC §1961(1)(A) NY Penal Law §225 | NYC, NY | 1980-2001 |
| acts and threats involving gambling | bookmaking | 18 USC §1961(1)(A) NY Penal Law §225 | NYC, NY | 1980-2001 |
| acts and threats involving gambling | bolita/numbers/lottery | 18 USC §1961(1)(A) NJ Stat. 2C:37 | NJ | 1974-2001 |
| acts and threats involving gambling | illegal gambling machines | 18 USC §1961(1)(A) NJ Stat. 2C:37 | NJ | 1980-2001 |
| acts and threats involving gambling | bookmaking | 18 USC §1961(1)(A) NJ Stat. 2C:37 | NJ | 1980-2001 |
| interstate and foreign transmission of wagering information | transmission of wagers by telephone or fax | 18 USC §1961(1)(B) 18 USC §1084 | FL, NY, NJ | 1974-2001 |

[2] As set forth in the Bill of Particulars and discussed in the United States' Supplement to the United States' Memorandum of Law in Response to Battle, Jr.'s Reply Regarding Objections to Portions of Testimony of Orestes Vidan Raising New Issues and Response to Court's Inquiry, the dates indicated in the Bills of Particulars were approximate, and given that most of the dates in the Bills of Particulars reflected a span of years, where appropriate, the United States submits that the dates should be extended by two years.

| | | | | |
|---|---|---|---|---|
| interstate and foreign transportation of wagering paraphernalia | person-to-person delivery of gambling records via airplane or automobile travel | 18 USC §1961(1)(B) 18 USC §1953 | FL, NY, NJ | 1974-1991 |
| illegal gambling business | bolita/numbers/lottery, bookmaking, illegal gambling machines | 18 USC §1961(1)(B) 18 USC §1955 | FL, NY, NJ | 1974-1988 |
| interstate travel or transportation in aid of racketeering activity | transportation of illegal gambling paraphernalia machine parts | 18 USC §1961(1)(B) 18 USC §1952 | NY, NJ | 1980-2021 |
| murder-for-hire | murder-for-hire of Jose "Papo" Enriquez | 18 USC §1961(1)(B) 18 USC §1958 | NY, NJ | 12/23/74-10/7/83 |
| money laundering only (not conspiracy to launder money) | monetary transactions through Union Financial Research | 18 USC §1961(1)(B) 18 USC §1956(a) | Miami, FL, Panama | 1980-1985 (and through 1987) |
| interstate and foreign travel or transportation in aid of racketeering | transportation of cash via courier for Union Financial Research | 18 USC §1961(1)(B) 18 USC §1952 | Miami, FL Panama | 1980-1985 |
| money laundering only (not conspiracy to launder money) | monetary transactions through Voltaire Trading | 18 USC §1961(1)(B) 18 USC §1956(a) | Miami, FL, Islas Canarias, Spain, Panama, Venezuela | 1980-1986 (and through 1988) |
| interstate transportation of gambling paraphernalia | transportation of gambling records | 18 USC §1961(1)(B) 18 USC §1953 | JFK Airport NY | 04/08/83 |

| | | | | |
|---|---|---|---|---|
| acts and threats involving conspiracy to murder | conspiracy to murder Jose Ramiro Enrique | 18 USC §1961(1)(A) NY Penal Law §125 | NYC, NY | 09/13/83 |
| acts and threats involving murder | murder of Jose 'Palu' ... Enriquez | 18 USC §1961(1)(A) NY Penal Law §125 | NYC, NY | 10/7/83 |
| acts and threats involving arson | arson at 2004 Amsterdam Ave. | 18 USC §1961(1)(A) NY Penal Law §150.20 | Manhattan, New York | 12/12/83 |
| money laundering and conspiracy to launder money | monetary transactions through Aztec Financial Enterprises | 18 USC §1961(1)(B) 18 USC §1956(a) 18 USC §1956(h) | British Virgin Islands, Miami, FL, Panama, Venezuela | 1984-mid-1990's |
| acts and threats involving arson | arson at 1621 Westchester Avenue, Bronx | 18 USC §1961(1)(A) NY Penal Law §150.20 | NYC, NY | 08/23/84 |
| acts and threats involving murder | murder of Francis Gariche | 18 USC §1961(1)(A) NY Penal Law §125 | NYC, NY | 08/23/84 |
| acts and threats involving murder | murder of Trinidad Rodriguez | 18 USC §1961(1)(A) NY Penal Law §125 | NYC, NY | 08/23/84 |
| acts and threats involving murder | murder of Blossom Porto | 18 USC §1961(1)(A) NY Penal Law §125 | NYC, NY | 08/23/84 |
| acts and threats involving arson | arson at 410 W. 56th | 18 USC §1961(1)(A) NY Penal Law §150.20 | NYC, NY | 10/26/84 |

| | | | | |
|---|---|---|---|---|
| acts and threats involving murder | murder of Jannin Toribio | 18 USC §1961(1)(A) NY Penal Law §125 | NYC, NY | 10/26/84 |
| acts and threats involving murder | murder of Laura Sirgo | 18 USC §1961(1)(A) NY Penal Law §125 | NYC, NY | 10/26/84 |
| acts and threats involving arson | arson at 715 Riverdale Avenue Brooklyn | 18 USC §1961(1)(A) NY Penal Law §150.20 | NYC, NY | 12/15/84 |
| acts and threats involving arson | arson at 215 Troy Avenue, Brooklyn | 18 USC §1961(1)(A) NY Penal Law §150.20 | NY | 12/27/84 12/29/84 |
| acts and threats involving arson | arson at 90 Rockaway Avenue | 18 USC §1961(1)(A) NY Penal Law §150.20 | NYC, NY | 01/85-06/85 |
| acts and threats involving arson | arson in 291 Evergreen Avenue Brooklyn | 18 USC §1961(1)(A) NY Penal Law §150.20 | Kings County, NY | 03/25/85 |
| acts and threats involving murder | murder of Carlos Rivera | 18 USC §1961(1)(A) NY Penal Law §125 | Kings County, NY | 03/25/85 |
| interstate and foreign travel or transportation in aid of racketeering | transportation of approximately $800,000 destined for Switzerland | 18 USC §1961(1)(B) 18 USC §1952 | NY, France | 04/02/85 |
| acts and threats involving arson | arson at 36 Myrtle Avenue, Brooklyn | 18 USC §1961(1)(A) NY Penal Law §150.20 | NYC, NY | 04/08/85 |
| acts and threats involving arson | arson at 900 Nicolas Avenue | 18 USC §1961(1)(A) NY Penal Law §150.20 | NYC, NY | 05/13/85 |

| | | | | |
|---|---|---|---|---|
| money laundering **and** conspiracy to launder money | money laundering through YMR Fashions | 18 USC §1961(1)(B) 18 USC §1956(a) 18 USC §1956(h) | Miami, FL | 1988-1992 |
| money laundering **and** conspiracy to launder money | money laundering through Arnold Stores | 18 USC §1961(1)(B) 18 USC §1956(a) | Miami, FL | 1988- 1995 |
| money laundering **and** conspiracy to launder money | monetary transactions through Stanara Company Corp. | 18 USC §1961(1)(B) 18 USC §1956(a) 18 USC §1956(h) | | 1988-2001 |
| money laundering **and** conspiracy to launder money | money laundering through Trends Clothing Corporation | 18 USC §1961(1)(B) 18 USC §1956(a) 18 USC §1956(h) | Miami, FL Cayman Islands | 1994-1995 |
| money laundering **and** conspiracy to launder money | money laundering through Biscayne Coast Investments, Inc. | 18 USC §1961(1)(B) 18 USC §1956(a) 18 USC §1956(h) | Miami, FL | 1995-2001 |

## UNITED STATES' NOTICE RE: PREDICATE OFFENSES MANUEL MARQUEZ AGREED TO PARTICIPATE IN

The United States of America, by and through the undersigned Assistant United States Attorneys, and pursuant to this Court's request, hereby gives notice of the following predicate offenses which the United States submits have been sufficiently established as to Manuel Marquez and which should be submitted to the jury for consideration: [1]

---

[1] All of the predicate offenses listed below are contained in the United States' Bills of Particulars filed in the instant case. The United States has removed those which it believes should not be submitted to the jury.

| Predicate Objective | Nature | Statute(s) | Location(s) | Date(s) |
|---|---|---|---|---|
| acts and threats involving gambling | bolita/numbers/lottery | 18 USC §1961(1)(A) NY Penal Law §225 | NYC, NY | early 1970's-2004 |
| acts and threats involving gambling | illegal gambling machines | 18 USC §1961(1)(A) NY Penal Law §225 | NYC, NY | 1980-2004 |
| acts and threats involving gambling | bookmaking | 18 USC §1961(1)(A) NY Penal Law §225 | NYC, NY | 1980-2004 |
| acts and threats involving gambling | bolita/numbers/lottery | 18 USC §1961(1)(A) NJ Stat. 2C:37 | NJ | 1970's-2004 |
| acts and threats involving gambling | illegal gambling machines | 18 USC §1961(1)(A) NJ Stat. 2C:37 | NJ | 1980-2004 |
| acts and threats involving gambling | bookmaking | 18 USC §1961(1)(A) NJ Stat. 2C:37 | NJ | 1980-2004 |
| interstate and foreign transmission of wagering information | transmission of wagers by telephone or fax | 18 USC §1961(1)(B) 18 USC §1084 | FL, NY, NJ | 1970's-2004 |
| interstate and foreign transmission of wagering paraphernalia | person-to-person delivery of gambling records via airplane or automobile travel | 18 USC §1961(1)(B) 18 USC §1953 | FL, NY, NJ | 1970's-2004 |

| | | | |
|---|---|---|---|
| illegal gambling business | bolita/numbers/lottery, bookmaking, illegal gambling machines | 18 USC §1961(1)(B) 18 USC §1955 | FL, NY, NJ | early 1970's-2004 |
| interstate travel or transportation in aid of racketeering activity | transportation of illegal gambling machines and/or machine parts | 18 USC §1961(1)(B) 18 USC §1952 *Stricken* | NY, NJ | 1980-2004 |
| interstate and foreign travel or transportation in aid of racketeering | transportation of cash via courier for Union Financial Research | 18 USC §1961(1)(B) 18 USC §1952 | Miami, FL Panama | 1980-1985 |
| interstate transportation of gambling paraphernalia | transportation of gambling records | 18 USC §1961(1)(B) 18 USC §1953 | JFK Airport NY | 04/08/83 |
| acts and threats involving conspiracy to commit murder | conspiracy to murder Jose "Pabulo" Enriquez *Reserve* | 18 USC § 1961(1)(A) *Reserve* §125 | NYC, NY | 09/13/83 |
| acts and threats involving murder | murder of Jose "Palulo" Enriquez *Reserve* | 18 USC § 1961(1)(A) *Reserve* §125 | NYC, NY | 10/07/83 |
| acts and threats involving arson | arson at 2004 Amsterdam Ave. | 18 USC 1961(1)(A) NY Penal Law §150.20 | Manhattan, New York | 12/12/83 |
| acts and threats involving arson | arson at 1621 Westchester Avenue, Bronx | 18 USC §1961(1)(A) NY Penal Law §150.20 | NYC, NY | 08/23/84 |

| | | | | |
|---|---|---|---|---|
| acts and threats involving murder | murder of Francis Marlene | 18 USC §1961(1)(A)<br>NY Penal Law §125 | NYC, NY | 08/23/84 |
| acts and threats involving murder | murder of Trinidad Rodriguez | 18 USC §1961(1)(A)<br>NY Penal Law §125 | NYC, NY | 08/23/84 |
| acts and threats involving murder | murder of Blossom Layton | 18 USC §1961(1)(A)<br>NY Penal Law §125 | NYC, NY | 08/23/84 |
| acts and threats involving arson | arson at 410 W. 56th Street | 18 USC §1961(1)(A)<br>NY Penal Law §150.20 | NYC, NY | 10/26/84 |
| acts and threats involving murder | murder of Jannin Toribio | 18 USC §1961(1)(A)<br>NY Penal Law §125 | NYC, NY | 10/26/84 |
| acts and threats involving murder | murder of Laura Sirgo | 18 USC §1961(1)(A)<br>NY Penal Law §125 | NYC, NY | 10/26/84 |
| acts and threats involving arson | arson at 715 Riverdale Avenue, Brooklyn | 18 USC §1961(1)(A)<br>NY Penal Law §150.20 | NYC, NY | 12/15/84 |
| acts and threats involving arson | arson at 215 Troy Avenue, Brooklyn | 18 USC §1961(1)(A)<br>NY Penal Law §150.20 | NY | 12/27/84<br>12/29/84 |
| acts and threats involving arson | arson at 580 Rockaway Avenue | 18 USC §1961(1)(A)<br>NY Penal Law §150.20 | NYC, NY | 01/85–06/85 |
| acts and threats involving arson | arson at 291 Evergreen Avenue, Brooklyn | 18 USC §1961(1)(A)<br>NY Penal Law §150.20 | NY | 03/25/85 |
| acts and threats involving murder | murder of Carlos Rivera | 18 USC §1961(1)(A)<br>NY Penal Law §125 | Kings, County, NY | 03/25/85 |

| | | | | |
|---|---|---|---|---|
| acts and threats involving arson | arson at 960 Myrtle Avenue, Brooklyn | 18 USC §1961(1)(A) NY Penal Law §150.20 | NYC, NY | 04/08/85 |
| acts and threats involving arson | arson at 900 Nicolas Avenue | 18 USC §1961(1)(A) NY Penal Law §150.20 | NYC, NY | 05/13/85 |
| acts and threats involving murder | homicide of Omar Boche ~~Stricken~~ | 18 USC §1961(1)(A) NY Penal Law §150.20 | NY, NY | 06/27/92 |
| interstate and foreign travel or transportation in aid of racketeering | transportation of cash and checks via courier from Miami, FL to Lima, Peru | 18 USC §1961(1)(B) 18 USC §1952 | Miami, FL Lima, Peru | 12/92-present |
| money laundering **and** conspiracy to launder money | transportation of cash and checks via courier from Miami, FL to Lima, Peru and wire transfer of funds from Switzerland | 18 USC §1961(1)(B) 18 USC §1956(a) 18 USC §1956(h) | Miami, FL, Lima, Peru, Switzerland | 12/92-present |

## UNITED STATES' NOTICE RE: PREDICATE OFFENSES JULIO ACUNA AGREED TO PARTICIPATE IN

The United States of America, by and through the undersigned Assistant United States Attorneys, and pursuant to this Court's request, hereby gives notice of the following predicate offenses which the United States submits have been sufficiently established as to Julio Acuna and which should be submitted to the jury for consideration:[1]

---

1. All of the predicate offenses listed below are contained in the United States' Bills of Particulars filed in the instant case. The United States has removed those which it believes should not be submitted to the jury.

| Predicate Objective | Nature | Statute(s) | Location(s) | Date(s) |
|---|---|---|---|---|
| acts and threats involving gambling | bolita/numbers/lottery | 18 USC §1961(1)(A)<br>NY Penal Law §225<br>NY Penal Law §20.00 | NYC, NY | 1974-2004 |
| acts and threats involving gambling | illegal gambling machines | 18 USC §1961(1)(A)<br>NY Penal Law §225 | NYC, NY | 1980-2004 |
| acts and threats involving gambling | bookmaking | 18 USC §1961(1)(A)<br>NY Penal Law §225 | NYC, NY | 1980-2004 |
| acts and threats involving gambling | bolita/numbers/lottery | 18 USC §1961(1)(A)<br>NJ Stat. 2C:37<br>NJ Stat. 2C:2-6 | NJ | 1974-2004 |
| acts and threats involving gambling | illegal gambling machines | 18 USC §1961(1)(A)<br>NJ Stat. 2C:37 | NJ | 1980-2004 |
| acts and threats involving gambling | bookmaking | 18 USC §1961(1)(A)<br>NJ Stat. 2C:37 | NJ | 1980-2004 |
| interstate and foreign transmission of wagering information | transmission of wagers by ... or fax | 18 USC §1961(1)(B)<br>18 USC §1084<br>18 USC §2 | FL, NY, NJ | 1974-2004 |
| illegal gambling business | bolita/numbers/lottery, bookmaking, illegal gambling machines | 18 USC §1961(1)(B)<br>18 USC §1955<br>18 USC §2 | FL, NY, NJ | 1974-2004 |

| | | | | |
|---|---|---|---|---|
| murder-for-hire | "Palulo" Rique | 18 USC §1961(1)(B) 18 USC §1958 | NY, NJ | 12/23/74- ██ 83 |
| murder-for-hire | murder of Ernst Torres | 18 USC §1961(1)(B) 18 USC | NY, FL | 01/76 |
| acts and threats involving conspiracy to murder | conspiracy to murder Ernesto Torres | 18 USC 1961(1)(A) Fla. Stat. § 782.04 Fla. Stat. § 777.04(3) | NY, Opa Locka, FL | 01/76- 06/16/76 |
| interstate travel in aid of racketeering activity | murder of Ernesto Torres | 18 USC §1961(1)(B) 18 USC §1952 | NY, FL | 06/76 |
| acts and threats involving conspiracy to murder | conspiracy to murder Idalia Fernandez | 18 USC 1961(1)(A) Fla. Stat. §782.04 Fla. Stat. §777.04(3) | Opa Locka, FL | 06/16/76 |